# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **DENNINE STANLEY,** | Case No. 1:18 CV 1733 |
| Plaintiff, | |
| v. | Magistrate Judge James R. Knepp II |
| **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** | |
| Defendant. | MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

Plaintiff Dennine Stanley ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI in December 2012, alleging a disability onset date of December 30, 2009. (Tr. 440-45). Her claims were denied initially and upon reconsideration. (Tr. 208-10, 214-15). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 218). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on March 6, 2015. (Tr. 49-86). On March 27, 2015, ALJ Mary Lohr found Plaintiff not disabled in a written decision. (Tr. 171-79). The Appeals Council vacated that decision and remanded in March 2016. (Tr. 184-88). In so doing, the Appeals Council held the ALJ did not

adequately evaluate Plaintiff's subjective complaints, did not properly weigh the opinions of two consultative examiners, and did not fully explain the RFC which contradicted the VE's testimony regarding the availability of certain sedentary jobs. (Tr. 186-87).

On remand, a second hearing was held August 18, 2016, at which medical expert Keith Holan, M.D. testified. (Tr. 87-112). On August 26, 2016, ALJ George Roscoe issued a fully favorable decision (Tr. 203-07). The Appeals Council vacated this decision and remanded again in January 2017. (Tr. 190-97). The Appeals Council held the ALJ erred in concluding the medical evidence of record, including the testimony of medical expert Dr. Holan, demonstrated Plaintiff medically equaled the requirements of Listing 1.04A. (Tr. 194-95).

On remand, Plaintiff (represented by counsel), a medical expert, and a VE testified at a third hearing on March 1, 2018. (Tr. 113-41). On April 4, 2018, ALJ Roscoe issued an unfavorable decision. (Tr. 12-28). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on July 26, 2018. (Doc. 1).

## FACTUAL BACKGROUND

Personal Background and Testimony

Born in 1966, Plaintiff was 46 years old on her application date, and 51 years old at the time of her March 2018 hearing. *See* Tr. 440. She had a tenth-grade education and past work with an apartment cleaning service. (Tr. 55-56). Plaintiff alleged disability due to degenerative disc disease, a herniated disc at L4/L5, and fibromyalgia. (Tr. 489).

*March 2018 Hearing*

Plaintiff reported constant lower back pain which affected her ability to sit, stand, and walk. (Tr. 117-18). She estimated that she could stand for fifteen to twenty minutes, sit for thirty minutes,

and walk for fifteen minutes at a time. (Tr. 118-19). These limitations were due to back pain and a need to change positions. *Id*. Plaintiff's back pain radiated down into her right foot, resulting in numbness and tingling. (Tr. 124-25). She also had pain in her right knee and arthritis in some of her fingers. (Tr. 119). Plaintiff treated her back and knee pain with ibuprofen and Cymbalta. (Tr. 120-21).

Around the house, Plaintiff's seventeen-year-old son vacuumed, he also did her laundry because she was unable to walk down stairs; she helped fold and sort. (Tr. 118). He also did yardwork and took out the trash. (Tr. 122).

In a typical day, Plaintiff sent her son off to school then watched television and waited for him to return. *Id*. She laid down while watching television because it was better for her back. (Tr. 123). She grocery shopped for herself and her son and "sometimes" drove. *Id*.

Testimony of Robert Sklaroff, M.D.

Dr. Sklaroff, a medical expert, testified at the March 2018 hearing. *See* Tr. 126-35. When asked by the ALJ to state his profession for the record, Dr. Sklaroff replied, "medical oncology, hematology, internal medicine, and independent medical exam." (Tr. 126). The ALJ then asked Dr. Sklaroff if the qualifications set forth at Exhibit 20F (Tr. 804-15) were an accurate assessment of his professional experience, to which he replied, "[y]es." *Id*. After the ALJ's inquiry, Plaintiff's counsel stipulated "to the qualifications and the independence of the medical expert." *Id*.

Dr. Sklaroff provided a detailed recitation of Plaintiff's diagnoses, objective findings, symptoms, and overall physical condition. (Tr. 127-29). He ultimately concluded Plaintiff did not meet or equal a listing. (Tr. 129). He opined Plaintiff would be able to stand, sit, or walk for up to six hours during an eight-hour workday with normal breaks. (Tr. 130). Plaintiff would have "[n]o problems" with her ability to push, pull, squat, bend, or reach. *Id*. She could "lift on occasion 25

pounds frequently" and could not work around heights, ropes, scaffolds, ladders, or hazardous machinery. *Id*. Further, Dr. Sklaroff opined Plaintiff had "no appreciable limits" in her ability to climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. *Id*.

On cross examination, Plaintiff's counsel asked: "Dr. Sklaroff, I take it from your introductory statements that you are not an orthopedic specialist nor a rheumatologist, do I have that correct?", to which Dr. Sklaroff replied, "[t]hat is correct". (Tr. 131). Plaintiff's counsel then asked Dr. Sklaroff about several specific examinations he reviewed in Plaintiff's medical records. (Tr. 131-34).

First, counsel directed him to review a June 2016 examination by Dr. Friedhoff, specifically asking if Dr. Friedhoff's findings indicated Plaintiff had some symptoms of radiculopathy in her right lower extremity. (Tr. 131-32). Dr. Sklaroff concluded, based on these findings, there could be a finding of radiculopathy, but they did not satisfy the radiculopathy listing. (Tr. 132). When asked if he believed Plaintiff had diabetic neuropathy, Dr. Sklaroff noted "I think that would be reasonable with longstanding neuropathy findings" based on her diabetes. *Id*. Pursuing Plaintiff's radiculopathy treatment history further, counsel asked Dr. Sklaroff if notes from a July 2016 visit with Dr. Friedhoff showing "weakness of the right lower extremity, minus three out of five at L4/5", combined with the inability to heel to toe walk, indicated Plaintiff had "problems" with her right lower extremity radiculopathy "from L4/5 degenerative disc disease". (Tr. 133). Dr. Sklaroff concluded that "in the absence of an EMG, nerve conduction time or any neurophysiologic study, it is not possible to link the two in a reproducible fashion." *Id*. Dr. Sklaroff elaborated further in response to counsel's questions

> Q: Isn't it a fact, Doctor, that the bottom line here is that you simply disagree with the assessment from Dr. Friedhoff that this is the cause of her problem is the L4/L5 - -

| | |
|---|---|
| A: | In the absence of the correlative anatomic finding and updated MRI to see if there's any kind of impingement at all on the nerve coming out from this cord and/or a neurophysiologic study showing denervation, there's no – a clinical muscle weakness is no[t] muscle atrophy, there is no finding of fibrillations or particulations [phonetic] respectively in the exam or in an EMG. And so therefore, I can't conclude from those assertions that she's weak, that the patient has satisfied 1.04A with or without the treatment of fibromyalgia, which was the argument in the past. |
| Q: | All right. I have not mentioned fibromyalgia in any of my questioning to you, doctor, I'm talking – |
| A: | I know, but I saw that in the other document where this was used to suggest that a patient may not meet, but could equal and it previously speaks of phenomena. I mean, keep the record open and get another imaging and get another EMG and then you go to one EMG and you'll know. |

(Tr. 135).

Relevant Medical Records[1]

Plaintiff established primary care with Ridgepark Family Practice ("Ridgepark") in December 2012. (Tr. 764). She left her previous physician due to a "disagreement of treatment over back pain". *Id*. During the visit, Plaintiff reported recent weight gain. *Id*. She had a normal examination including full range of motion in her extremities. *Id*. The physician's assistant diagnosed hypertension, diabetes mellitus, abnormal weight gain, and mixed hyperlipidemia. *Id*.

Plaintiff returned to Ridgepark in January 2013 reporting chronic back pain with bilateral medial knee aches, which had been occurring "for years". (Tr. 662). She reported feeling "achy" around her knees and left forearm periodically; nothing lessened or worsened the pain. *Id*. Plaintiff

---

1. Plaintiff only challenges the ALJ's evaluation of her physical, not mental, impairments. *See* Doc. 16, at 10-20. Therefore, the undersigned only summarizes those records relevant to her arguments. *Cf. Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (issues raised for first time in reply brief are waived); *Kennedy v. Comm'r of Soc. Sec.,* 87 F. App'x 464, 466 (6th Cir. 2003) (underdeveloped arguments waived).

requested a referral to pain management for back pain and fibromyalgia. *Id*. Plaintiff noted she saw a pain management specialist in the past who only provided back injections. *Id*. The injections did not relieve her pain and she "was not interested in trying that again so pain management would not continue to treat her." *Id*. Plaintiff had a normal physical examination, including full range of motion in her extremities with no edema. *Id*. Providers diagnosed, *inter alia*, lumbago and prescribed Cymbalta and Vicodin. *Id*. In February 2013, Plaintiff reported the Cymbalta was "working well". (Tr. 661). She had a normal physical examination, including full range of motion in her extremities without edema. *Id*. Providers diagnosed joint pain (in multiple sites) and increased her Cymbalta dosage. *Id*.

Plaintiff underwent a consultative physical examination with Hasan Assaf, M.D., in March 2013. (Tr. 647-56). She reported low back pain which began seven years prior. (Tr. 647). Plaintiff described "sharp" pain ("over 10"), which radiated to her left leg. *Id*. The pain was "present at all times" but worse with standing, walking, and bending. *Id*. Pain medications and muscle relaxants improved her symptoms. *Id*. Plaintiff further reported an eleven year history of "fleeting muscle pain" in both arms and legs. *Id*. The pain involved different muscles and lasted anywhere from hours to several days, resolving spontaneously. *Id*. She reported these symptoms responded to Cymbalta. *Id*. Finally, Plaintiff reported that, three days prior, she noticed pain and swelling in both her index and middle fingers. *Id*. In her daily life, Plaintiff cooked four meals per week and performed "limited" cleaning due to her back pain; she did not do laundry. (Tr. 648). She shopped once per week. *Id*. Plaintiff showered three times per week and dressed herself daily. *Id*. On examination, Plaintiff had a normal gait; walked on her heels and toes without difficulty; had an 80-degree squat and normal stance; did not require assistance dressing/undressing or getting on/off the exam table; she was able to rise from a chair without difficulty. (Tr. 649). Dr. Assaf found

Plaintiff had positive straight leg raises on the left side at 60-degrees and on the right at 80-degrees. *Id*. Her joints were stable and non-tender. *Id*. Plaintiff had tender points at the base of the skull and neck (bilaterally), and bilaterally at her elbows. (Tr. 650). Manual muscle testing was normal with the exception of slightly reduced dorsolumbar spine flexion. (Tr. 653-56). Dr. Assaf assessed, *inter alia*, lumbar disc disease and fibromyalgia. *Id*.

Plaintiff treated at Ridgepark in July 2013 for a cough and lower back pain. (Tr. 757). She reported a history of chronic back pain for which she "used to" see a pain management specialist; however, she reported stopping narcotic medication on her own because she did not want to be on it. *Id*. Plaintiff reported a three day "flare up" of back pain causing "tingling" in her upper and lower extremities. *Id*. She further noted the pain had not affected her strength, range of motion, or sensation. *Id*. Plaintiff took ibuprofen "periodically" without relief; Flexeril relieved her pain. *Id*. On examination, Plaintiff had trigger points in her bilateral lumbar paraspinous musculature. *Id*. She had normal curvature and motor function, no vertebral tenderness, and normal sensation to light touch. *Id*. Providers diagnosed lumbago, muscle spasms, and prescribed Flexeril and ibuprofen. *Id*.

Once in February, and twice in March 2014, Plaintiff treated at Ridgepark with Kelly Csoltko, F.N.P. (Tr. 753-55). She presented for a follow-up regarding management of her diabetes, high blood pressure, and anxiety symptoms. (Tr. 753-55). Plaintiff denied pain in her muscles and joints, limitation in her range of motion, paresthesias, or numbness. (Tr. 753-54). On examination, Plaintiff had normal range of motion in her extremities without edema or other abnormalities. (Tr. 754-55). Similarly, Plaintiff denied musculoskeletal symptoms to Ms. Csoltko in April and May 2014, who again noted normal musculoskeletal examination findings. (Tr. 750-51). The day after this May 2014 visit, Plaintiff returned to Ms. Csoltko for assistance with disability paperwork. (Tr.

7

749). Plaintiff reported having back pain since childhood, noting she had herniated discs and spinal stenosis. *Id*. She reported pain in her muscles and joints and limited range of motion. *Id*. On examination, Ms. Csoltko noted Plaintiff had no tenderness in the lumbar region, but she could not perform flexion, due to pain at 45 degrees. *Id*. She noted Plaintiff exhibited pain when walking on heels or toes and while sitting in her chair; Plaintiff changed positions frequently. *Id*. Ms. Csoltko diagnosed lumbago, chronic back pain, and spinal stenosis of the lumbar region. *Id*. She directed Plaintiff to return in one month for a follow-up. *Id*.

Plaintiff returned to Ms. Csoltko in September 2014. (Tr. 748). She denied any musculoskeletal symptoms, and examination revealed normal range of motion in her extremities. *Id*. Plaintiff denied musculoskeletal symptoms at her Ridgepark visits in November 2014 and January 2015, and her physical examinations were normal. (Tr. 746-47).

Plaintiff treated with George Friedhoff, D.O., in June 2016. (Tr. 784-87). She reported a history of chronic back pain which worsened over the past six months. (Tr. 784). She reported difficulty walking with weakness in the right lower extremity with ankle dorsiflexion and great toe dorsiflexion. *Id*. Plaintiff had tried facet injections with no relief and anti-inflammatories with minimal relief. *Id*. She reported 8/10 pain which radiated to her right leg, worse with standing or walking for more than ten to fifteen minutes. *Id*. On examination, Plaintiff had joint tenderness and decreased range of motion. (Tr. 786). She had weakness, 4/5 strength with right ankle dorsiflexion and great toe dorsiflexion. (Tr. 787). Plaintiff "otherwise [had] 5 out of 5 strength". *Id*. She had decreased sensation to pinprick and light touch. *Id*. A lumbosacral examination revealed spinal tenderness to palpation at L4/L5; normal squatting ability; positive lying, sitting, reverse, and contralateral straight leg raises (in her back only) on the right side, negative on the left; abnormal heel and toe walking on the right, normal on the left; and negative Patrick's

maneuvers bilaterally. *Id*. Dr. Friedhoff assessed back pain and spinal stenosis of the lumbar region. (Tr. 788). He prescribed some home exercises and instructed Plaintiff to limit activity to comfort and avoid activity which increased discomfort. *Id*.

Plaintiff had three Ridgepark visits in July and August 2017. (Tr. 799, 801, 803). She denied musculoskeletal symptoms (Tr. 799, 803), except for left knee pain (due to fibromyalgia) in July (Tr. 801). Plaintiff had a normal musculoskeletal examination at each visit, with the exception of a small lump on her wrist. (Tr. 799, 801, 803).

Opinion Evidence

*Treating Source*

In March 2015, Ms. Csoltko completed a physical medical source statement. (Tr. 770-71). She opined Plaintiff could lift five to ten pounds occasionally. (Tr. 770). Ms. Csoltko noted this was due to pain on examination and Plaintiff's inability to perform flexion and extension of extremities due to pain. *Id*. She further opined Plaintiff could stand, walk, and sit for four hours total during her workday, only one to two hours without interruption, with a need to change positions frequently. *Id*. Plaintiff could rarely climb, crouch, or crawl; she could occasionally stoop or kneel; and she could frequently balance. *Id*. She opined Plaintiff could frequently reach, push, pull, and engage in fine and gross manipulation. (Tr. 771). Plaintiff needed to avoid environmental hazards such as heights, moving machinery, temperature extremes, and pulmonary irritants. *Id*. Ms. Csoltko stated these restrictions were due to Plaintiff's blood glucose levels and a need to prevent further damage. *Id*. She opined Plaintiff would need to alternate positions at will and elevate her legs 45-degree at will. *Id*. Plaintiff experienced "mild" pain which would interfere with her concentration and take her off task. *Id*.

*Examining Physician*

In March 2013, Dr. Assaf opined Plaintiff had "marked restrictions on activities involving prolonged sitting, prolonged standing, and walking." (Tr. 650).

*Reviewing Physicians*

In March 2013, State agency physician Gerald Klyop, M.D., reviewed the record and opined Plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for six hours of an eight-hour workday; frequently climb ramps/stairs, stoop, kneel, crouch, and crawl. (Tr. 147-48). She was unlimited in her ability to push and/or pull. (Tr. 148). Dr. Klyop further opined Plaintiff needed to avoid concentrated exposure to hazards such as hazardous machinery, unprotected heights, and commercial driving. (Tr. 149). In August 2013, Leslie Green, M.D., concurred with these limitations, but added Plaintiff should avoid concentrated exposure to vibrations; avoid all exposure to hazards; and limited Plaintiff to occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs. (Tr. 162-64). She could never climb ladders, ropes, or scaffolds. (Tr. 162).

<u>VE Testimony</u>

A VE appeared and testified at the March 2018 hearing before the ALJ. *See* Tr. 136-40. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way in which the ALJ determined Plaintiff to be. (Tr. 136-37). The VE opined such an individual could perform jobs such as a laundry worker, packager, or plastics worker. (Tr. 137).

ALJ Decision

In a written decision dated April 4, 2018, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date. (Tr. 14). He concluded Plaintiff had the following severe impairments: degenerative changes of the lumbosacral spine, degenerative changes of the knees, obesity, dysthymic disorder, diabetes mellitus type II, hypertension, and a history of alcohol and cocaine abuse in remission. *Id.* He found none of these impairments, alone or in combination with any other, met (or medically equaled) the severity of a listed impairment (Tr. 15). The ALJ then set forth Plaintiff's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity (20 CFR 416.945) to perform medium work as defined in 20 CFR 416.967(c), except for no climbing of ladders, ropes, or scaffolds; no exposure to hazards (heights, machinery, commercial driving); and mental limitation that she perform simple, routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation, or confrontation) (20 CFR 416.969(a)[)].

(Tr. 18). The ALJ found Plaintiff had no past relevant work. (Tr. 26). He concluded Plaintiff was a "younger individual" on her application date and subsequently changed age category to an individual "closely approaching advanced age". *Id.* She had a "limited" education. *Id.* The ALJ further concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy. *Id.* Thus, the ALJ found Plaintiff had not been under a disability since her application date. (Tr. 27).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence

is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two objections to the ALJ's decision. First, she argues the ALJ committed reversible error by assigning primary weight to Dr. Sklaroff because he "misrepresented his qualifications", and his opinion was "in conflict" with all other opinion evidence in the record. (Doc. 16, at 10-11). Second, Plaintiff argues the ALJ's RFC determination that she could perform medium work is unsupported by the record. *Id*. at 15-18. For the reasons contained herein, the undersigned finds no error and affirms.

Opinion Evidence

As an initial matter, Plaintiff is correct that, under the regulations, there exists a hierarchy of medical opinions: first, is the treating source; second, is the non-treating source, one who has examined but not treated the plaintiff; and last, is a non-examining source, one who renders an opinion based on a review of the medical record as a whole. 20 C.F.R. § 416.902. An ALJ must provide "good reasons" for the weight given to a treating source, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004), but not for a non-treating or non-examining source, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (holding "the SSA requires ALJs to give

13

reasons for only *treating* source" opinions) (emphasis in original); *Murray v. Comm'r of Soc. Sec.*, 2013 WL 5428734, at *4 (N.D. Ohio) ("Notably, the procedural 'good reasons' requirement does not apply to non-treating physicians."). Additionally, while treating source opinions are ordinarily entitled to greater weight than that of a non-examining source, there are instances where it may be appropriate for the ALJ to look more favorably upon the opinion of a non-examining source, such as a medical expert, especially when the medical expert has access to the claimant's complete medical record and observed the claimant at trial. *See Compton v. Astrue*, 2012 WL 4473155, at *8 (S.D. Ohio) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)), *report and recommendation adopted*, 2012 WL 5288003; *see also Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir. 2011) (ALJ did not err in discounting treating sources' opinions based on testimony of a medical expert who directly refuted treating physicians' findings).

*Dr. Sklaroff*

Plaintiff first argues the ALJ erroneously assigned primary weight to Dr. Sklaroff, a non-examining physician, because he "misrepresented his qualifications", and his opinion is "inconclusive and conflicts with substantial evidence of record". (Doc. 16, at 10-11). The Commissioner responds that Dr. Sklaroff never misrepresented his qualifications, and the ALJ's decision to assign him great weight is supported by substantial evidence. (Doc. 19, at 9-10). The undersigned affirms the ALJ's decision in this regard.

Plaintiff contends that Dr. Sklaroff represented himself as an orthopedic specialist at her March 2018 hearing. (Doc. 16, at 10-11) (citing Tr. 131). A plain reading of the transcript page cited by Plaintiff reveals this is wholly inaccurate. On cross examination, Plaintiff's counsel asked: "Dr. Sklaroff, I take it from your introductory statements that you are *not an orthopedic specialist* nor a rheumatologist, do I have that correct?", to which, Dr. Sklaroff clearly replied, "*[t]hat is*

14

*correct*". (Tr. 131) (emphasis added). Further, when asked by the ALJ to state his profession for the record, Dr. Sklaroff replied, "medical oncology, hematology, internal medicine, and independent medical exam." (Tr. 126). The ALJ then asked Dr. Sklaroff if the qualifications in his curriculum vitae (Tr. 804-15) were an accurate assessment of his professional experience, to which he replied, "[y]es." *Id*. After the ALJ's inquiry, Plaintiff's counsel then stipulated "to the qualifications and the independence of the medical expert." *Id*. Nowhere in his curriculum vitae does Dr. Sklaroff identify himself as an orthopedic specialist. *See* Tr. 804-15. Thus, to the extent Plaintiff argues Dr. Sklaroff's opinion cannot be relied upon because he misrepresented his expertise, such an argument is meritless.

In evaluating his opinion, the ALJ accurately summarized Dr. Sklaroff's testimony, then provided several reasons for assigning it "primary weight":

> [t]he undersigned notes Dr. Sklaroff's professional experience, knowledge of Social Security regulations, and that he based his opinion on a thorough review of the case file (Ex. 20F). The undersigned acknowledges the representative's contention that the examinations conducted by the orthopedic specialist in June 2016 and July 2016 indicated 4/5 and minus 3/5 strength, which was suggestive of radiculopathy. However, Dr. Sklaroff testified that there is no testing, for example, a MRI, or other neurological finding of impingement to link this as radiculopathy. In addition, the undersigned finds that progress notes from visits with the orthopedic specialist that indicated a MRI was ordered and pending approval support Dr. Sklaroff's opinion (Ex. 16F/10, 12). The undersigned also finds that Dr. Sklaroff's opinion is supported by examinations during the period of review that demonstrated the claimant maintained normal cardiovascular and neurologic functioning and otherwise maintained 5/5 strength and full range of motion in her extremities (Ex. 5F/4-7, 9F/l-19, 12F/2, 15F/4, 19F/3, 5). Therefore, the undersigned gives primary weight to Dr. Sklaroff's opinion.

(Tr. 22).

Here, the ALJ properly considered Dr. Sklaroff's professional expertise, knowledge of the Social Security regulations, and his thorough review of the case file in determining the weight assigned. 20 C.F.R. § 416.927(c) (factors considered in deciding weight given to any medical

opinion include the length, nature, and extent of the treating relationship, as well as the provider's specialization). Further, the ALJ concluded Dr. Sklaroff's opinion was supported by examination notes throughout the relevant period which showed normal cardiovascular and neurologic functioning, and normal strength and full range of motion in her extremities. (Tr. 22) (citing Tr. Tr. 661, 663-64, 746-48, 750-51, 752, 754-56, 764, 799, 801) (treatment notes demonstrating Plaintiff's denial of musculoskeletal symptoms and normal extremity examinations with full range of motion). The ALJ's rationale here directly implicates supportability – an additional factor an ALJ is required to consider under the regulations when evaluating a medical opinion. 20 C.F.R. § 416.927(c). For these reasons, the undersigned finds the ALJ's rationale here is more than sufficient.

*Dr. Assaf & Ms. Csoltko*

Plaintiff also generally argues the ALJ erred in the weight he assigned to the opinions of nearly every other physician of record. Specifically, she compares the treatment relationship of each physician, and consistency of their opinions, to that of Dr. Sklaroff. However, the Sixth Circuit has held that the regulations "do[] not instruct an ALJ to compare the consistency of treating and examining physicians' opinions to each other", instead, an ALJ is instructed "to compare the consistency of a physician's opinion to the *record as a whole.*" *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441-42 (6th Cir. 2010) (emphasis in original). Here, the ALJ analyzed each of the physician's opinions and assigned weight to each. As to Dr. Assaf, the ALJ assigned his opinion "little weight" because he found it internally inconsistent with his generally unremarkable exam. (Tr. 24). Indeed, Dr. Assaf noted Plaintiff had a normal gait, walked on her heels and toes without difficulty, had a normal stance, did not require assistance dressing/undressing or getting on/off the exam table, and found she was able to rise from a chair

16

without difficulty. (Tr. 649). He also reported Plaintiff's manual muscle testing was almost entirely normal. (Tr. 653-56). Similarly, the ALJ concluded Ms. Csoltko's opinion was unsupported by her own treatment notes which detailed numerous examinations where Plaintiff had full range of motion in her extremities. (Tr. 25) (citing Tr. 661, 663-64, 746-48, 750-51, 752, 754-56, 764, 801). Finally, the ALJ cited much of this same evidence when deciding to assign "partial weight" to the State agency physicians, finding their opinions generally consistent with the record showing Plaintiff experienced back pain, though not as limiting as they opined. (Tr. 23). In each of these evaluations, the ALJ adhered to the regulatory requirements, incorporating the factors of supportability and consistency in his rationale. 20 C.F.R. § 416.927(c). It is not enough for Plaintiff to compare the treatment relationship of each physician, and consistency of their opinions, to that of Dr. Sklaroff. The ALJ is tasked with examining the opinions *individually* and how they relate to the record as a whole. *Coldiron*, 391 F. App'x at 441-42. The ALJ accurately did so here, and his findings here are supported by substantial evidence and are affirmed.

*Keith Holan, M.D.*

In addressing the other opinion evidence of record, Plaintiff also contends the ALJ erred in not addressing the testimony of Keith Holan, M.D. (Doc. 16, at 14). Dr. Holan testified as a medical expert at Plaintiff's August 2016 hearing. *See* Tr. 104-06. The same ALJ issued a fully favorable decision (Tr. 203-07), within which he assigned Dr. Holan "great weight", concluding the opinion was consistent with the objective evidence of record (Tr. 206). As noted above, this hearing decision was vacated by the Appeals Council. (Tr. 192-96). In its decision, the Appeals Council disagreed with the ALJ and specifically rejected Dr. Holan's testimony, concluding, *inter alia*, that he "did not clarify which of the criteria of Listing 1.04A were documented in the record and which were missing", "did not identify other findings in the record he believed were at least of equal

17

medical significance to the criteria missing from Listing 1.04A", and thus his opinion was "not consistent with the finding of medical equivalence". (Tr. 193). The Appeals Council ordered, on remand, the ALJ to "[o]btain supplemental evidence from a medical expert to clarify the nature, severity, and limiting effects of claimant's impairments[.]" (Tr. 195). The ALJ complied – enter Dr. Sklaroff.

Plaintiff is correct the ALJ did not address Dr. Holan's testimony in his opinion and the regulations require an ALJ to discuss every opinion of record, regardless of its source. *See* 20 C.F.R. § 416.927(b). However, the Sixth Circuit's instructions are clear – this Court should not remand a case back to the Agency, when remand would be an idle and useless formality. *See Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 669 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)) (holding "that where 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'"). By asking the ALJ to provide an analysis of Dr. Holan's testimony, what Plaintiff essentially asks is that the ALJ offer a *second* critique of Dr. Holan's opinion after the Appeals Council already explicitly rejected that opinion and the ALJ's first assessment thereof. Harmless error in a Social Security case occurs where a reviewing Court "can say with great confidence" that "no reasonable ALJ would reach a contrary decision on remand." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Here, between the Appeals Council's thorough rejection of Dr. Holan's testimony and the ALJ's subsequent analysis of the later expert testimony from Dr. Sklaroff, this Court can confidently say, that remanding for the ALJ to consider Dr. Holan's opinion would be an idle and useless formality. For these reasons, the undersigned finds no harmful error here and affirms.

RFC

Finally, Plaintiff contends the ALJ erred in finding her capable of "medium work", specifically arguing the finding is not supported by substantial evidence. For the following reasons, the undersigned finds the ALJ's RFC supported, and affirms.

A claimant's RFC is defined as "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1)(i). However, it must be supported by substantial evidence. In formulating the RFC, the ALJ is not required to adopt any physician's opinion verbatim. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment.").

In support of her position, Plaintiff argues that "no direct evidence" supports her capacity for medium work, including the opinions of Dr. Assaf, Ms. Csoltko, and the State agency physicians. (Doc. 16, at 15-16). Plaintiff does not cite to any new evidence, nor any evidence the ALJ failed to discuss, in support of her position. Instead, she cites numerous treatment records and assessments from each provider (all of which were discussed by the ALJ in his decision, Tr. 15-16, 19-25) which she alleges demonstrates she is incapable of medium work. *Id*. at 16-17. Importantly, although Plaintiff can point to evidence suggesting a contrary conclusion, this Court must affirm even if substantial evidence (or indeed a preponderance of the evidence) supports a

claimant's position, "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. And here, the ALJ's conclusion is supported by substantial evidence.

The ALJ did not rely on a single piece of evidence when formulating Plaintiff's RFC, he comprehensively considered the record evidence as a whole. *See* Tr. 19-26. The ALJ recognized Plaintiff had some limitations from her physical impairments, but concluded that her "treatment plans essentially involved routine outpatient visits, medication management, and instruction on diet and exercise". (Tr. 21). The ALJ further pointed out that, during many of these outpatient visits, Plaintiff "reported no pain in muscles or joints, no limitation of range of motion, and no parethesias or numbness, and a review of systems indicated she was generally healthy." (Tr. 20). This assessment is supported by the record. *See* Tr. 661-62, 746-48, 750-51, 754-55, 757, 764, 799, 801, 803. The ALJ also recognized Plaintiff's symptom improvement with medications. (Tr. 20) (citing Tr. 641, 647). Finally, as discussed thoroughly above, the ALJ's analysis and weighing of the opinion evidence of record is supported by substantial evidence. Taken together, Plaintiff's benign treatment records, improvement with medication, and the opinion evidence of record provide substantial evidence to support the ALJ's RFC here. For these reasons, the ALJ's decision is affirmed.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI supported by substantial evidence and affirms that decision.

s/ James R. Knepp II
United States Magistrate Judge
